IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 0:18-cv-62647-BLOOM

SURE SPORTS LENDING, LLC,
A Limited Liability Company,

       Plaintiff,

v.

JASON PETERS,

       Defendant.
_____/

**JASON PETERS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT THEREOF**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant, Jason Peters ("Peters"), hereby moves to dismiss the Complaint [ECF No. 1] filed by Plaintiff, Sure Sports Lending, LLC ("SSL"), with prejudice, due to SSL's inability to state any viable cause of action against Peters.

**OVERVIEW**

SSL's Complaint should be dismissed because it lacks the most basic elements of a breach of contract claim – the existence of a valid and enforceable contract and recoverable damages. In yet another example of a shakedown of a professional athlete by a business engaged in questionable money lending practices, SSL's entire case against Peters is predicated upon an illegal and unenforceable Fee Agreement, pursuant to which SSL acted as a loan broker for Peters and assessed him an "advance fee" that SSL seeks to collect in this action. In addition to the illegality and unenforceability of the Fee Agreement, SSL is not entitled to the $180,000.00 that it seeks to recover from Peters, be it under the terms of the Fee Agreement or otherwise because SSL

1

admittedly rendered no services to Peters in connection with the transaction at issue. These fatal deficiencies in SSL's Complaint cannot be remedied, which warrants dismissal of the entire case, with prejudice.

## MEMORANDUM OF LAW

As further explained below, SSL's Complaint should be dismissed, with prejudice, because: 1) the Fee Agreement upon which it is based is illegal pursuant to Florida's Loan Broker Act and is therefore unenforceable; 2) the plain language of the Fee Agreement does not entitle SSL to receive compensation for loan transactions in which SSL does not render any services; and 3) SSL suffered no damages as a result of the conduct alleged in the Complaint.

**I.     Summary of SSL's Factual Allegations**

SSL holds itself out as a Pennsylvania limited liability company that is in the business of providing "underwriting services" to borrowers, "including, without limitation, connecting potential borrowers to clientele that they otherwise would not be afforded the opportunity to loan from." Compl. ¶¶ 1, 21. The Complaint states that on February 25, 2016, SSL entered into what is described as a Fee Agreement[1] with Peters, pursuant to which Peters "agreed to pay SSL a fee equal to Four Percent (4%) of the gross amount or loan commitment received by [Peters] pursuant to underwriting services performed by SSL on [Peters'] behalf." *Id.* at ¶ 6 and Exhibit A thereto, Section A. The Complaint further states that Peters "agrees not to obtain financing from Lenders or equity participants supplied by SSL, either directly or through third parties, without prior express written consent of SSL, for a period of 36 months from the date of the Agreement." *Id*. at ¶¶ 8, 17 and Exhibit A thereto, Section D. The Complaint does not reference any provision in the

---

[1] The Fee Agreement states that it "shall be governed by the laws of the state of Florida." Compl. ¶ 5, and Exhibit A thereto, Section F.

2

Fee Agreement stating that SSL is entitled to compensation from Peters in connection with any loans that SSL is not involved in procuring, nor does the Agreement contain any such provision. Compl., Exhibit A.

SSL claims that on August 18, 2017, it "attained a loan" for Peters in an unspecified amount through Cornerstone Capital, a lender. *Id.* at ¶¶ 10, 18. Thereafter, on April 20, 2018, Peters allegedly obtained a separate $4,500,000.00 loan directly from Cornerstone Capital without the written consent of SSL, conduct that SSL contends constitutes a breach of the Fee Agreement. *Id.* at ¶¶ 11-12, 19-23. After unsuccessfully demanding payment of $180,000.00 from Peters, which amounts to 4% of the $4,500,000.00 loan from Cornerstone Capital that SSL had no involvement in procuring, SSL is now suing Peters for this amount. *Id.* at ¶¶ 13, 23.

## II. Argument

### A. *Motion to Dismiss Standard*

"When the allegations of the complaint, however true, could not raise a claim for entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1966 (2007). Thus, "a plaintiff's obligation to provide the 'grounds' for 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct. at 1964-65; *Smith v. Under Armour, Inc.*, Case No. 08-22835-CIV, 2008 WL 5486764, at *1 (S.D. Fla. Dec. 18, 2008). That is, "a complaint's factual allegations must be enough to raise a right to relief above a speculative level." *Twombly*, 127 S.Ct. at 1965; *Smith*, 2008 WL 5486764, at *1.[2] It thus follows that dismissal of a complaint is

---

[2] Although the well-pled factual allegations in a complaint are to be accepted as true at the motion to dismiss stage, a "district court is not required to accept as true [plaintiff]'s conclusions of law when considering a Rule 12(b)(6) motion to dismiss. On the contrary, the court may make its own

3

warranted under Rule 12(b)(6) "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Group, Inc.*, 459 F. 3d 1304, 1308 (11th Cir. 2006); *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F. 2d 1171, 1174 (11th Cir. 1993).

### B. *The Fee Agreement is Illegal Under Florida Law and is Therefore Unenforceable*

SSL's Complaint should be dismissed because the Fee Agreement upon which it is based is a loan broker contract pursuant to which SSL seeks to assess and collect an advance fee from Peters, which is illegal pursuant to Florida's Loan Broker Act. To state a breach of contract claim in Florida, a plaintiff must plead and establish: (1) the existence of a valid and enforceable contract; (2) a material breach of that contract; and (3) damages resulting from the breach. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). Importantly, "[t]he right to contract is subject to the general rule that the agreement must be legal and if either its *formation* or its performance is criminal, tortious or otherwise opposed to public policy, the contract or bargain is illegal [....] [and] ***[w]here a statute imposes a penalty for an act, a contract founded upon said act is considered void in Florida***." *Thomas v. Ratiner*, 462 So.2d 1157, 1159 (Fla. 3d DCA 1984) (emphasis added); *Power Fin. Credit Union v. Nat'l Credit Union Admin. Bd.*, 494 F. App'x 982, 986 (11th Cir. 2012) (noting that a contract which violates a provision of a statute is void and illegal and, will not be enforced in Florida courts.)

SSL's activities, as described in the Complaint and the Fee Agreement, fall squarely within the definition of a loan broker under Florida's Loan Broker Act, which states:

---

determination of the legal issue. . . ." *Solis-Ramirez v. U.S. Dept. of Justice*, 758 F. 2d 1426, 1429 (11th Cir. 1985). "Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007).

> Loan broker means any person […] who: (a) For or in expectation of consideration arranges or attempts to arrange or offers to fund a loan of money, a credit card, or a line of credit; (b) For or in expectation of consideration assists or advises a borrower in obtaining or attempting to obtain a loan of money, a credit card, a line of credit, or related guarantee, enhancement, or collateral of any kind or nature […].

Fla. Stat § 687.14(4). As alleged in the Complaint, SSL provided "underwriting services" under the Fee Agreement that include "**connecting potential borrowers to clientele that they otherwise would not be afforded the opportunity to loan from**." Compl. ¶ 21 (emphasis added); *see also* Compl. ¶ 6 and Exhibit A thereto, Section A. Thus, the Fee Agreement is a contract for SSL to provide loan brokering services to Peters.[3]

The Complaint also states that "[a]ccording to the [Fee] Agreement, Peters agreed to pay SSL a fee equal to Four Percent (4%) of the gross amount or loan commitment received by Peters pursuant to underwriting services performed by SSL on Peters' behalf." Compl. ¶ 6 and Exhibit A thereto, Section A. This type of "consideration which is assessed or collected, prior to the closing of a loan, by a loan broker" qualifies as an "advance fee" under Florida's Loan Broker Act. Fla. Stat. § 687.14(1). Consequently, the $180,000.00 that SSL seeks to collect from Peters pursuant to the Fee Agreement constitutes an "advance fee" assessed by SSL in exchange for SSL providing loan broker services to Peters.

Section 687.141(1), Florida Statutes, states that "[n]o loan broker shall assess or collect an advance fee from a borrower to provide services as a loan broker." In addition to constituting a violation of the Florida Loan Broker Act, assessing or collecting an advance fee from a borrower for services rendered as a loan broker is a felony in the third degree. Fla. Stat. § 687.146 ("Whoever violates any provision of this act commits a felony of the third degree […]). The Fee Agreement

---

[3] Regardless of SSL's characterization of its services as "underwriting services," the proper standard is whether the services provided and actions taken by SSL qualify as activities of a loan broker, as defined by the Florida legislature. *See* Fla. Stat. § 687.14(4).

is therefore void because it is founded on the assessment and/or collection of an advance fee by a loan broker, which is illegal in Florida.[4] *See Thomas*, 462 So.2d at 1159 (holding that a contract in violation of a Florida statute is void).

### C. SSL is not Entitled to Recover any Damages from Peters Pursuant to the Fee Agreement or Otherwise

Even if the Fee Agreement was not an unenforceable illegal contract, SSL would have no basis upon which to recover the $180,000.00 in supposed damages that it seeks from Peters. Federal Rule of Civil Procedure 10(c) dictates that a copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes, including a Rule 12(b)(6) motion. *Berry v. Keller*, 157 Fed. Appx. 227, 228 (11th Cir. 2005); *Solis-Ramirez*, 758 F. 2d at 1430. When the allegations of a complaint are contradicted by an attached exhibit or other document, the attachment governs and must be considered in ruling on a motion to dismiss. *Griffin Indus. Inc.*, 496 F. 3d at 1206; *Hap v. Toll Jupiter Ltd. Partnership*, Case No. 07-81027-CIV, 2009 WL 187938, at *2 (S.D. Fla. Jan. 28, 2009). Thus, if a contract attached as an exhibit to the complaint demonstrates that the plaintiff's claim for relief lacks merit, the claim should be dismissed. *Siedle v. Nat'l Assoc. Sec. Dealers, Inc.*, 248 F.Supp.2d 1140, 1143 (M.D. Fla. 2002); *Jacksonville Newspaper Printing Pressmen & Assistants' Union No. 57 v. Florida Pub'g Co.*, 340 F.Supp. 993, 995 (M.D. Fla. 1972) ("[i]t follows that where plaintiff's cause of action arises out of a contract which is attached to his complaint as an exhibit, and where such contract shows unambiguously on its face that the relief prayed for is not merited, then dismissal is appropriate.").

---

[4] Based on this conduct by SSL, Peters may also assert one or more causes of action against SSL for damages resulting from any advance fees previously paid to SSL on other loan transactions, and may also seek punitive damages and recovery of attorney's fees and costs in connection therewith. Fla. Stat. § 687.147(1).

6

The allegations in the Complaint are that the terms of the Fee Agreement entitle SSL to a fee of 4% of the gross amount or loan commitment received by Peters pursuant to services actually rendered by SSL. Compl. ¶ 6 and Exhibit A thereto, Section A. Contrary to SSL's conclusory allegations (Compl. ¶¶ 13, 23), however, the Fee Agreement does not state that SSL is entitled to receive any compensation in connection with transactions in which it renders no services to Peters. Compl., Exhibit A. In its Complaint, SSL disavows any involvement in procuring the $4,500,000.00 loan that Peters obtained from Cornerstone Capital in April 2018 (*Id.* at ¶¶ 11-13, 19-23), which means that based on the plain language of the Fee Agreement, SSL is not entitled to the $180,000.00 fee that it seeks.

Beyond the terms of the Fee Agreement, it is also well-settled that "the purpose of compensatory damages is to compensate, not to punish defendants or bestow windfalls on plaintiffs," such that SSL may not recover damages "in excess of the amount which represents the loss actually inflicted by the action of [Peters]." *MCI Worldcom Network Svcs. v. Mastec, Inc.*, 995 So. 2d 221, 223-24 (Fla. 2008). As declared by the Florida Supreme Court:

> the fundamental principle of the law of damages is that the person injured by breach of contract or by wrongful or negligent act or omissions shall have fair and just compensation commensurate with the loss sustained in consequence of the defendant's act which gives rise to the action. In other words, the damages awarded should be equal to and precisely commensurate with the injury sustained.

*Id.* at 224. In *MCI Worldcom*, Mastec (the defendant) inadvertently severed one of MCI's underground fiber-optic cables, which remained unrepaired for 97 hours. *Id.* at 222. MCI, however, "did not suffer a disruption of its service because it was able to redirect the telecommunications traffic from the damaged cable to other cables in its system, [and] [a]s a result, MCI avoided any loss of profits." *Id.* The Florida Supreme Court agreed with Mastec that the "purpose of compensatory damages would be frustrated" if MCI were awarded damages for not

7

having use of the damaged cable because "Mastec would essentially be punished for damaging MCI's fiber-optic cable while MCI received a windfall." *Id.* at 223.  Explaining its decision that MCI was not entitled to such damages, the Court stated that "[b]ecause MCI did not actually suffer the loss of use of its telecommunications services … [a]ny damages to MCI based on rental replacement are purely theoretical." *Id.* at 229-230.

SSL allegedly rendered services to Peters that resulted in him attaining the loan from Cornerstone Capital for an unspecified amount in August 2017 (Compl. ¶¶ 10, 18) and does not claim to be owed any compensation from Peters in connection with this transaction, presumably because Peters previously paid SSL an amount equivalent to 4% of the amount of that loan.  Yet, despite admittedly having no involvement in the April 2018 Cornerstone Capital loan, SSL still seeks to recover 4% of the loan amount as if it had actually brokered that loan on behalf of Peters. *Id.* at ¶¶ 13, 23.  Unlike a situation where SSL may have brokered a loan for the benefit of Peters and not received compensation, the $180,000.00 that SSL seeks to recover from Peters would not compensate SSL for any loss actually suffered and would instead bestow a windfall upon SSL and impose a punishment upon Peters, which is prohibited under Florida law. *MCI Worldcom*, 995 So. 2d at 229-30.

## CONCLUSION

As demonstrated by the foregoing, SSL cannot state an actionable claim for breach of contract against Peters, and on this basis, Peters respectfully requests that the Court enter an Order dismissing SSL's Complaint, with prejudice, and granting any other or additional relief the Court deems just and proper.

Dated: December 10, 2018

Respectfully submitted,

**GREENBERG TRAURIG, P.A.**
333 SE 2nd Avenue, Suite 4400
Miami, FL  33131
Telephone:  (305) 579-0500
Facsimile:   (305) 579-0717

By: */s/ Danielle N. Garno*
DANIELLE N. GARNO
Florida Bar No.  492027
garnod@gtlaw.com
FRANCISCO O. SANCHEZ
Florida Bar No. 598445
sanchezfo@gtlaw.com

*Counsel for Defendant Jason Peters*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 10th day of December, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served on this day on all counsel of record or pro se parties identified on the attached Service List, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Danielle N. Garno
DANIELLE N. GARNO

## SERVICE LIST
***Sure Sports Lending LLC v. Jason Peters***
**Case No. 0:18-cv-62647-BB**

| | |
|---|---|
| **HEITNER LEGAL, PLLC**<br>Darren Heitner, Esq.<br>215 Hendricks Isle<br>Fort Lauderdale, FL 33301<br>Phone: 954-558-6999<br>Fax:    954-927-3333<br>darren@heitnerlegal.com<br><br>*Counsel for Plaintiff* | |