IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

SURE SPORTS LENDING, LLC,
A Limited Liability Company,

    Plaintiff,

v.

                                  Case No. 0:18-cv-62647-BLOOM

JASON PETERS,

    Defendant.
_____/

**RESPONSE TO JASON PETERS' MOTION TO DISMISS**

Plaintiff, SURE SPORTS LENDING, LLC ("Sure Sports" or "Plaintiff"), by and through undersigned counsel, hereby responds in opposition to Defendant's, JASON PETERS ("Peters" or "Defendant"), Motion to Dismiss, and, in support thereof, states as follows:

**OVERVIEW**

1. On November 1, 2018, Plaintiff filed a one (1) Count Complaint against Defendant alleging Breach of Contract based upon Defendant's failure to comply with material terms and conditions contained within the Fee Agreement executed by and between the parties on February 25, 2016. *See* [D.E. 1].

2. The Fee Agreement sets forth material terms and conditions regarding services provided by Plaintiff on Defendant's behalf and certain considerations and agreements regarding the business relationship entered into between the parties. One such consideration necessary for Plaintiff's execution of the Fee Agreement is that Defendant agrees not to circumvent Plaintiff, by seeking services directly from third parties supplied by Plaintiff to Defendant, for a period of thirty-six (36) months from the date of execution of the Fee Agreement without Plaintiff's prior

written consent. This consideration is a material obligation for the protection of Plaintiff's legitimate business interests, services, trade secrets, and/or other proprietary or confidential information, and is primarily in place to protect the usurpation of business, including, without limitation, lost profits, from Plaintiff without recourse or prior notice.

3. In complete disregard for the consideration outlined above, Defendant sought services from a party previously introduced and supplied by Plaintiff, without Plaintiff's prior written consent, and therefore committed a material breach of the Fee Agreement.

4. On December 10, 2018, Defendant filed a Motion to Dismiss Plaintiff's Complaint with prejudice ("Motion to Dismiss"), alleging that Plaintiff's Complaint should be dismissed because (i) the Fee Agreement constitutes an illegal and unenforceable contract, and/or (ii) Plaintiff is not entitled to recover compensatory damages. *See* [D.E. 7]. However, based upon the reasoning provided below, Plaintiff's Complaint is not subject to dismissal with prejudice.

5. As a result thereof, Plaintiff hereby files this response in opposition to, and respectfully requests that the Court deny, Defendant's Motion to Dismiss.

## **ARGUMENT**

### A. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure governs motions to dismiss for failure to state a claim upon which relief can be granted. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; the motion is not a procedure for resolving a contest between the parties about the facts or the substantive merit of the plaintiff's case." *Ventrassist Pty Ltd. v. Heartware, Inc.*, 377 F. Supp. 2d 1278, 1285 (S.D. Fla. 2005). In ruling on a motion to dismiss, the Court's review is "limited to

the four corners of the complaint." *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002). Furthermore, the facts stated in the complaint and all reasonable inferences to be derived therefrom must be accepted as true and construed in favor of the non-moving party. *See Jackson v. Birmingham Bd. Of Educ.*, 309 F.3d 1333, 1335 (11th Cir. 2002); *see also Pincus v. Law Offices of Erskine & Fleisher*, 617 F. Supp. 2d 1265, 1270 (S.D. Fla. 2009) (stating questions of fact cannot be resolved on a motion to dismiss). Thus, the issue regarding motions to dismiss pursuant to Rule 12(b)(6) "is not whether the plaintiff will ultimately prevail on his or her claim, but rather, whether the allegations contained in the complaint will be sufficient to allow discovery as to their proof." *Lapar v. Potter*, 395 F. Supp. 2d 1152, 1155 (MD. Fla. 2005) (citing *Jackam v. Hosp. Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579-80 (11th Cir. 1986)).

Courts have enunciated an extremely high standard in order to grant a motion to dismiss, stating, "A complaint should not be dismissed for failure to state a claim unless it appears **beyond doubt** that the pleader can prove no set of facts in support of his claim which would entitle him to relief." *Ventrassist Pty Ltd.* at 1285 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)) (emphasis added). As a result, "the threshold of sufficiency to which a complaint is held at the motion-to-dismiss stage is exceedingly low." *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 880 (11th Cir. 2003); *see also In re Southeast Banking Corp.*, 69 F.3d 1539, 1551 (11th Cir. 1995) (stating that, pursuant to the Federal Rules embodiment of the concept of liberalized notice pleading, "for better or for worse, the Federal Rules of Civil Procedure do not permit district courts to impose upon plaintiffs the burden to plead with the greatest specificity they can.").

Lastly, the Eleventh Circuit has noted that a district court's discretion to dismiss a complaint without leave to amend is severely restricted by Rule 15(a)(2) of the Federal Rules of Civil Procedure. *See, e.g., Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001) (reversing district

court's Rule 12(b)(6) dismissal with prejudice and granting plaintiff leave to amend its complaint for a second time); *Justice v. United States*, 6 F.3d 1474, 1482, n.15 (11th Cir. 1993) (noting that dismissal with prejudice is appropriate "only in those situations where a lesser sanction would not better serve the interests of justice.").

 **B. The Fee Agreement Constitutes a Valid and Enforceable Agreement Under Florida Law And Plaintiff Has Sufficiently Claimed Damages Pursuant to Defendant's Breach.**

In order to state a cause of action for breach of contract, the following elements must be asserted: (1) existence of a valid contract; (2) material breach; and (3) damages. *See Kaloe Shipping Co. Ltd. v. Goltens Service Co., Inc.*, 315 Fed. Appx. 877, 880 (11th Cir. 2009). Within its Complaint, Plaintiff alleges each of the following: (1) existence of a valid contract pursuant to Plaintiff's and Defendant's execution of the Fee Agreement on or around February 25, 2016; (2) Defendant's breach thereof based on Defendant wrongfully circumventing Plaintiff in order to obtain services from a party previously supplied by Plaintiff, thereby committing a breach of Section D of the Fee Agreement, which states that Defendant "**agrees not to obtain financing from Lenders or equity participants supplied by SSL, either directly or through third parties, without prior express written consent of SSL, for period of 36 months [i.e. February 26, 2019] from the date of this agreement**"; and (3) damages stemming from said breach. In response, Defendant alleges that Plaintiff has failed to plead a cause of action for breach of contract because (i) the Fee Agreement is illegal and unenforceable, and/or (ii) Plaintiff is unable to assert a claim for damages. Defendant's claims are defective, without merit and improper for a motion to dismiss.

      **i.      The Fee Agreement Constitutes a Legal and Enforceable Agreement Between Plaintiff and Defendant.**

Notwithstanding the fact the Fee Agreement was entered into by Plaintiff and Defendant nearly three (3) years ago, only now – due to Defendant's breach and Plaintiff's demand to remedy said breach – does Defendant claim that the Fee Agreement is an illegal and unenforceable document, citing Florida's Loan Broker Act.

Florida's Loan Broker Act defines a "loan broker" as "someone (not otherwise regulated by a state or federal agency), who '[f]or or in expectation of consideration arranges ... or offers to fund a loan of money....'" and states that a violation of the act is committed "when an advance fee is assessed or collected or false or misleading representations are made in the offer or sale of the services of a loan broker." *See Buckeye Ventures, Inc. v. Trafalgar Capital Specialized Investment Fund Luxembourg*, 2009 WL 2477470, at *2 (S.D. Fla. 2009); *see* Fla. Stat. § 687.14 (A loan broker is "[A]ny person, ... who: (a) ... arranges or attempts to arrange or offers to fund a loan of money, a credit card, or a line of credit; (b) ... assists or advises a borrower in obtaining or attempting to obtain a loan of money, a credit card, a line of credit, or related guarantee, enhancement, or collateral of any kind or nature; (c) acts for or on behalf of a loan broker for the purpose of soliciting borrowers; or (d) holds himself out as a loan broker").

Plaintiff is not a loan broker, nor does Plaintiff hold itself out as a loan broker. Plaintiff is a full service company that offers customized underwriting, banking and financing solutions for professional athletes, and Plaintiff's Complaint specifically alleges that Plaintiff was engaged for the sole purpose of providing underwriting services on Defendant's behalf. Plaintiff's services are significantly different from that of a loan broker in that Plaintiff, through its in-house services and on behalf of its network of bank affiliations:

(i) Underwrites the prospective loan and provides various services relating thereto on behalf of the bank seeking to provide the loan and has outsourced such services to Plaintiff, including, without limitation, providing (a) an underwriting memo that provides a summary of transaction recommendations and addresses frequently asked questions, (b) recommended underwriting guidelines regarding terms such as Loan to Contract Value, Debt Service Coverage Ratio, Minimum Cash Equity, Maximum Term, Maximum Amortization, Direct Deposit, and Personal Guarantee via the borrower's guaranteed contract, (c) review of the potential borrower's Personal Financial Statement in order to verify validity of the potential borrower's accounts, and (d) other professional recommendations necessary in order to give the potential lender a clearer perspective of the potential borrower's financial condition;

(ii) Assesses and analyzes risk on behalf of lenders seeking to provide loans, including, without limitation, (a) providing a contract analysis, market analysis, and/or salary analysis for the potential borrower, and requesting an independent analysis relating thereto in order to ensure accuracy, (b) analyzing player history, statistics, and media projections in order to project long-term career scenarios, (c) providing the lender with the borrower's cash flow position throughout the entire proposed length of the loan and structuring repayment in order to meet the lender's and borrower's mutual needs, and (d) recommending mitigation factors such as liquidity requirements in order to protect the lender while still ensuring that the borrower has sufficient cash flow and assets for all current obligations, living expenses, and any unforeseeable emergency expenses;

(iii) Pulls (a) borrower's credit reports in order to review all active trade lines, any late payments, and any other information contained thereon for research and analytical purposes, (b) background reports necessary to obtain information regarding any current Uniform Commercial Code filings, liens, judgments, criminal history, current property, and/or any associated business, and (c) follow up reports regarding any information discovered in the background report, and monitors borrower's credit report on a quarterly basis for the life of the loan;

(iv) Handles and completes the the insurance process for borrower and lender, including, without limitation, (a) obtaining multiple quotes for borrower's review to ensure borrower is obtaining the most competitive and cost-efficient pricing while maintaining the required amount of coverage necessary for lender's needs, and (b) handling all other requirements necessary by the insurance company, borrower, and lender in order to obtain binding coverage, including, without limitation, customizing dishonor and disgrace language as necessary for each individual, which is a service not provided by insurance companies to anyone else in the industry;

(v) Communicates with the borrower's payroll to assist the borrower in ensuring compliance with repayment obligations so that the borrower does not unwittingly default on payment of the loan, including, without limitation (a) setting up a direct deposit / ACH account with a bank in order to ensure repayment of loan payments, (b) monitoring accounts via direct access (as granted via a letter of authorization provided by the borrower), (b) requesting W2s and/or paystubs, (c) resolving any problems relating to missed payments as required by the lender

      and/or borrower, and (d) terminating the direct deposit / ACH account upon full repayment of the loan;

(vi) Completes lien searches and files and terminates Uniform Commercial Code liens with the required state and county, and provides borrower and lender with a "paid in full" letter and confirmation of termination upon full repayment of the loan;

(vii) Drafts and/or recommends loan documents (including, without limitation, promissory notes, loan and security agreements, direct deposit agreements, letters to payroll, confession of judgment, pledge and security agreements, affidavits, and/or errors and omission) for borrower and lender review and approval, and reviews all loan documents originally generated by lenders; and

(viii) Coordinates and records all closings for quality assurance and record keeping purposes, walks the parties through the entire closing process in order to ensure each party understands all terms and conditions and have no outstanding questions relating thereto, and provides each party with signed copies of the loan documents.

As such, Plaintiff is not a "loan broker," but instead is a full service company seeking to provide borrowers and lenders with duly qualified services as requested or deemed necessary for the contracting parties, and any claim or categorization of Plaintiff as a "loan broker" or classification of Plaintiff's services as "brokering a loan" is nothing more than a red herring utilized by Defendant for the purpose of misguiding the Court. Moreover, Defendant's claim that Plaintiff is a "loan broker" would require a Court examination into Plaintiff's conduct for the purpose of determining whether Plaintiff falls under the definition provided under Florida's Loan Broker Act, which constitutes a fact-base inquiry not appropriate for determination on motion to

dismiss. *See Watershed Treatment Programs, Inc. v. United Healthcare Ins. Co.*, 2007 WL 1099124, at *2 (S.D. Fla. Apr. 10, 2007) (stating that "examination of the parties conduct is a fact-based inquiry, something that cannot be resolved in a motion to dismiss.").

Notwithstanding, Plaintiff has not committed any violation of Florida's Loan Broker Act. *See, e.g., Credicorp, Inc. v. State, Dept. of Banking and Finance*, 659 So. 2d 376, 383 (Fla. 1st DCA 1995) (discussing violations under Florida's Loan Broker Act, and stating that companies "that decide to pursue business in Florida have the choice of either voluntarily submitting to licensure, and thereby falling with the statutory exception, **or** complying with Florida's regulation that prohibits certain loan brokering acts"; thus, if a company chooses not to voluntarily submit to licensure, it must follow the rules found in Chapter 687). Fla. Stat. § 687.14 defines an "advance fee" as "any consideration which is assessed or collected, prior to the closing of a loan, by a loan broker"; *see, e.g. U.S. v. Thomas*, 62 F.3d 1332 (11th Cir. 1995) (loan brokerage firm's former clients testifying that they paid advance fees, which were payments made to firm prior to the funding or approval of any loans); *Vroom v. State*, 48 So. 3d 82 (Fla. 2d DCA 2010) (discussing agent whose role was to negotiate loan agreements with potential borrowers and then sell the transactions to the ultimate lenders; agent collected an advance fee as part of negotiation with the borrowers, which were payments made by borrowers to the agent prior to agent closing the transaction); *F.T.C. v. U.S. Mortgage Funding, Inc.,* 2011 WL 810790 (S.D. Fla. March 1, 2011) (discussing scheme by defendants whereby they enticed consumers to purchase mortgage modification services by promising that, for an advance fee, they will obtain mortgage loan modifications, and stating advance fee would be refunded if they failed to obtain the loan modification). The Fee Agreement does not call for the collection of an "advance fee." The four percent (4%) service fee required per the Fee Agreement is paid **at or after the time of**

**funding (which may be after closing)**, **but never prior to closing**. In some instances, Plaintiff offers clients the ability to defer payment of the service fee until a later date. In fact, Defendant is aware that Plaintiff does not engage in the collection of fees prior to closing based upon prior dealings with Plaintiff. In Exhibit B attached to the Complaint, Plaintiff, which has routinely discounted its service fee for Defendant from four percent (4%) to two percent (2%) based upon Defendant's status as a valued customer, sought Defendant's payment of a service fee that was deferred per mutual written agreement. The fee was for underwriting services provided for a loan obtained by Defendant on August 23, 2017; however, Defendant's first payment was not due until October 15, 2017, and the invoice for the remaining payment was not sent to Defendant until April 25, 2018. Plaintiff has never collected a service fee prior to closing, and any assertion that the Fee Agreement requires payment of an advance fee is unfounded, and does not comport with Plaintiff's business practices. Thus, because Plaintiff has not committed any violation of Florida's Loan Broker Act, the Fee Agreement constitutes a valid and enforceable agreement between Plaintiff and Defendant.

        ii.        **Plaintiff Has Sufficiently Alleged Damages Stemming From Defendant's Breach of the Fee Agreement.**

Alternatively, Defendant claims Plaintiff has not sufficiently pled breach of contract, because Plaintiff is not entitled to recover any damages as a result of Defendant's breach of the Fee Agreement. However, the standard for a motion to dismiss is whether Plaintiff has sufficiently pled the elements necessary to bring a claim, not whether Plaintiff will ultimately prevail thereon.

Notwithstanding, Defendant cites *MCI Worldcom Network Svcs. v. Mastec, Inc.* as Defendant's basis for why Plaintiff is not able to bring a claim of damages. *MCI* is wholly dissimilar to the matter at hand; therein, the Florida Supreme Court focused on loss-of-use

damages stemming from a negligence action in determining whether a motion for summary judgment was properly granted. At this junction, whether or not Plaintiff is entitled to damages is not subject to determination via motion for summary judgment, and any assertion or claim relating thereto is entirely premature and not the basis for which the Court is currently tasked with deciding Defendant's Motion to Dismiss.

Moreover, Plaintiff's claim for damages is not premised on loss-of-use. Due to Defendant's breach of the Fee Agreement based on Defendant's willful disregard for the non-circumvention period, Plaintiff incurred significant damages in the form of lost profits Plaintiff would have otherwise received as a service fee under the Fee Agreement. Section D of the Fee Agreement is intended to protect Plaintiff's legitimate business interests and other proprietary information concerning Plaintiff's business, and is a material consideration for Plaintiff to provide services to Defendant. The breach thereof is not a matter to be taken lightly, as it goes to the substance of Plaintiff's business, and a significant remedy – i.e., the amount Plaintiff would have otherwise received – must be sought in order to rectify damages caused thereby.

In a breach of contract action, the injured party may recover those damages that "naturally flow from the breach and can reasonably be said to have been contemplated by the parties at the time that the contract was made. It is not necessary that the parties have contemplated the exact injury that occurred as long as the actual consequences 'could have reasonably been expected to flow from the breach.'" *Katz Deli of Aventura, Inc. v. Waterways Plaza, LLC*, 183 So. 3d 374, 380 (Fla. 3d DCA 2013) (citation omitted).

Within the Complaint, Plaintiff seeks damages in the form of lost profits based upon Defendant's material breach of the Fee Agreement, and such damages are reasonably expected to flow from Defendant's breach. In Defendant's Motion to Dismiss, Defendant notes that Plaintiff

has provided services to Defendant in the past and that Defendant paid Plaintiff the four percent (4%) fee required; thus, Defendant is aware that breach of the Fee Agreement would enable Plaintiff to seek damages in such amount as lost profits stemming therefrom. *See Katz Deli of Aventura, Inc.*, at 381 (holding that lost profits is a proper measure of damages).

Defendant claims Plaintiff cannot claim damages, because the terms of the Fee Agreement limits Plaintiff to being only able to receive the four percent (4%) fee pursuant to services actually rendered. However, this interpretation fails to take into account Defendant's breach, which resulted in Plaintiff being wrongfully sidestepped for the purpose of providing such services. That is the crux of Plaintiff's action against Defendant. Defendant is essentially directing the Court to interpret the Fee Agreement in a manner that renders Plaintiff unable to claim damages due to not providing the services; yet, at all times, Plaintiff was fully able and capable of providing the services, never provided any indication that it was unable or unwilling to provide the services, and fully performed under the Fee Agreement as required. Nonetheless, the Court "may not engage in contract interpretation at the motion to dismiss stage as these arguments are more appropriate for summary judgment." *McKissack v. Swire Pac. Holdings, Inc.*, 2011 WL 1233370, at *3 (S.D. Fla. Mar. 31, 2011) (citation omitted); *see also Managed Care Solutions, Inc. v. Cmty. Health Sys., Inc.*, at *8 (S.D. Fla. Dec. 2, 2011) ("A determination of the proper interpretation of the contract should be decided at the summary judgment stage, not in a ruling on a[] motion to dismiss." (alteration added)); *Ben–Yishay v. Mastercraft Dev., LLC,* 553 F.Supp.2d 1360, 1373 (S.D. Fla. 2008) ("The proper interpretation of this provision is not a matter that can be resolved on a motion to dismiss for failure to state a claim. Interpretation of a clear and unambiguous contractual provision is a question of law properly decided on summary judgment." (citation omitted)). As Plaintiff has alleged actual damages stemming from

Defendant's breach of the Fee Agreement, Plaintiff has sufficiently pled a cause of action for breach of contract.

## CONCLUSION

For the foregoing reasons, Plaintiff, SURE SPORTS LENDING, LLC, requests that the Court deny Defendant's Motion to Dismiss and/or grant such other relief as the Court deems just and appropriate.

December 26, 2018                                        Respectfully submitted.

                                                         **HEITNER LEGAL, P.L.L.C**
                                                         *Attorney for Plaintiff*
                                                         215 Hendricks Isle
                                                         Fort Lauderdale, FL 33301
                                                         Phone: 954-558-6999
                                                         Fax: 954-927-3333

By:                                                      
                                                         DARREN A. HEITNER
                                                         Florida Bar No.: 85956
                                                         Darren@heitnerlegal.com


## CERTIFICATE OF SERVICE

I hereby certify that on December 26, 2018, a true and correct copy of the foregoing was electronically filed using CM/ECF on the all counsel of record identified on the Service List below.

**GREENBERG TRAURIG, P.A.**
333 SE 2nd Avenue, Suite 4400
Miami, FL 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717
DANIELLE N. GARNO
Florida Bar No. 492027
garnod@gtlaw.com
FRANCISCO O. SANCHEZ

Florida Bar No. 598445
sanchezfo@gtlaw.com

*Counsel for Defendant Jason Peters*